UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARGARET A. GIVANS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:07CV00813 ERW |
| ) | |
| MISSOURI DEPARTMENT OF MENTAL ) | |
| HEALTH-BELLEFONTAINE, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment [doc. #29] and Plaintiff's Motion for Summary Judgment [doc. #54].

**I.     PROCEDURAL BACKGROUND**

On April 20, 2007, Plaintiff Margaret Givans ("Plaintiff") filed a lawsuit against Defendant Missouri Department of Mental Health-Bellefontaine ("Defendant"). In her *pro se* Employment Discrimination Complaint [doc. #1], Plaintiff states that she brings her suit under Title VII of the Civil Rights Act of 1964, and alleges that she was terminated from her employment "in retaliation for filing a previous charge of employment discrimination." Plaintiff also indicates that she claims both racial and gender discrimination, in addition to her retaliation claim. On May 14, 2008, this Court granted Plaintiff's Motion to Appoint Counsel [doc. #20], and on June 4, 2008, Attorney Brian J. Gill was appointed to represent Plaintiff. Defendant filed the pending Motion for Summary Judgment [doc. #29] on March 16, 2009, while Plaintiff filed her pending Motion for Summary Judgment [doc. #54] on March 23, 2009.

## II.     BACKGROUND FACTS[1]

The Court begins by noting that, in a motion for summary judgment, the Local Rules require the nonmoving party to "include a statement of material facts as to which the party contends a genuine issue exists," and to provide specific references to the record for those matters contested by the nonmoving party. Local Rule 7-4.01(E). Any matters that are not specifically controverted by the nonmoving party are deemed admitted for the purpose of summary judgment. *Id.* Local rules such as this are implemented in order to prevent district courts from having to "scour the record looking for factual disputes." *Nw. Bank & Trust Co. v. First Illinois Nat'l Bank*, 354 F.3d 721, 725 (8th Cir. 2003).

In addition, Federal Rule of Civil Procedure 56(e) requires the nonmoving party to respond to a motion for summary judgment, but, in doing so, it "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." This requires the nonmoving party to present "'more than a scintilla of evidence.'" *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 812 (8th Cir. 2008) (quoting *Williams v. City of Carl Junction*, 480 F.3d 871, 873 (8th Cir. 2007)). The district court "'is not obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim.'" *Holland v. Sam's Club*, 487 F.3d 641, 644 (8th Cir. 2007) (quoting *Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1069 (8th Cir. 2005)).

---

[1] The Court's recitation of the facts is taken from Defendant's Statement of Uncontroverted Material Facts [doc. #30, p.i-viii]; Plaintiff's Statement of Uncontroverted Material Facts [doc. #55, p.i-x]; and Defendants' Response to Plaintiff's Statement of Uncontroverted Material Facts [doc. 68, p.1-6]. The Court also considered various exhibits, where appropriate.

This is an unusual case in that both of the Parties filed motions for summary judgment and, thus, they both assert that there are no genuine issues of material fact. Of course, there are still some facts (however minor) to which the Parties disagree. However, neither Party properly responded to their Opposing Party's Statement of Uncontroverted Material Facts. Plaintiff filed no response whatsoever to Defendant's Statement of Uncontroverted Material Facts,[2] while Defendant responded, but failed to provide specific references to the record to support its challenges to some of the facts identified as "controverted." The Eighth Circuit has confirmed that when a response to a statement of undisputed fact fails to comply with the requirements of the Local Rules, that statement may be deemed admitted. *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1033 (8th Cir. 2007). Thus, the Court will deem admitted each fact contained within Defendant's Statement of Uncontroverted Material Facts, and each fact contained within Plaintiff's Statement of Uncontroverted Material Facts that Defendant identified as "controverted" but failed to provide support demonstrating the existence of a genuine issue of material fact.

Turning now to a discussion of the facts of the case, Plaintiff was an employee of the State of Missouri Department of Mental Health, working at Bellefontaine Habilitation Center ("BHC") from 2002 to 2006. BHC is a residential facility for developmentally disabled adults that provides treatment and offers the residents quality of life. The residents at BHC are separated into Homes. In 2006, Plaintiff was working in Home 1610 on the third shift, from 10:30 p.m. to 6:30 a.m. From about January 2006 to about June 2006, Home 1610 experienced internal personnel

---

[2]Plaintiff did file her Statement of Uncontroverted Material Facts after Defendant and repeated verbatim many of Defendant's Facts. Thus, it is clear that Plaintiff admits at least some of the Facts set forth by Defendant.

problems among the staff. In particular, Brenda Atkins created personnel problems in the Home. An Official Memorandum authored by Simone Shelton, Personnel Officer at BHC, documented that Nurse Sonia Herrin, who worked in Home 1610, made a statement that Ms. Atkins is a troublemaker and that she needed to be moved out of the Home.

At that time, there were seven residents living in Home 1610. Each of those residents had a Person Centered Plan ("PCP"), an individualized treatment plan containing personal information about the resident and his or her support needs. R.S. is a resident of BHC, living in Home 1610. R.S. has been diagnosed with Schizoaffective Disorder and Moderate Mental Retardation. She can engage in physical aggression, self-injurious behaviors, and manic behaviors. She also has a history of leaving an area without waiting for a staff member and refusing to eat. From at least January 2006 to June 2006, Plaintiff was assigned to R.S. during the third shift. Josie Laney, Plaintiff's direct supervisor, assigned Plaintiff to R.S. because: Plaintiff worked well with R.S.; R.S. liked Plaintiff; Plaintiff was the only person who cleaned up R.S.'s room; and Plaintiff would stay up with R.S. during the night.

Due to her disability and behavioral issues, R.S.'s PCP required 1:1 supervision while awake, and visual checks every thirty minutes while sleeping. R.S.'s PCP also stated that staff should provide immediate assistance if R.S. signaled with her doorbell/alarm, although R.S.'s room did not have a doorbell/alarm. 1:1 supervision means that one employee is assigned to one particular resident in order to assist with daily activities and to intervene should the resident be in danger (such as falling or choking). 1:1 supervision can only be transferred to another employee when the employee assuming the 1:1 supervision signs the supervision level assignment. It is the responsibility of the employee maintaining 1:1 supervision to ensure that the supervision

assignment is signed at the time of transfer and it is the responsibility of the employee accepting the 1:1 supervision to sign the supervision level assignment..

On January 20, 2006, R.S.'s treatment team drafted an Addendum to her PCP. Under the Addendum, R.S. was to be on 1:1 supervision on all shifts. Specifically, the Addendum changed the supervision directive from thirty minute visual checks during the night to sitting outside R.S.'s door while she was sleeping. R.S.'s PCP was changed because a brain tumor had been discovered, and because she had an unsteady gait. On February 1, 2006, Sonia Potts did an in-service with the staff in Home 1610, including Plaintiff, on the Addendum to R.S.'s PCP. Ms. Potts showed and read the Addendum to Plaintiff and explained that during her shift, she was to sit outside of R.S.'s door so she could immediately help R.S. if and when she got up during the night. Ms. Potts also told Plaintiff where the Addendum could be found. Ms. Potts testified that training on this type of Addendum typically lasts about fifteen to twenty minutes. Plaintiff signed the Education and Training Record for review of R.S.'s supervision on February 1, 2006.

On June 14, 2006, Plaintiff signed a 1:1 supervision contract for R.S, covering the third shift from June 14, 2006 to June 15, 2006. In signing the agreement, Plaintiff represented that she understood the 1:1 supervision policy and procedure, and what was expected of her. On June 15, 2006, Brenda Atkins reported to Talmage Hillman[3] that Plaintiff did not maintain the 1:1 supervision level required for R.S. According to Ms. Atkins, Plaintiff broke the integrity of the supervision level by leaving the Home to get a soft drink and by allowing R.S. to be outside

---

[3]Talmage Hillman is a Mental Health Manager, acting as a Unit Manager. Mr. Hillman supervises all of the employees in his unit and is responsible for ensuring that the unit operates within all federal and state guidelines.

unattended. Ms. Atkins also reported that Plaintiff was lying on the couch while R.S. was sitting at the dining room table.

Plaintiff acknowledged that she left the Home and went to the BP station to get a soda, but reported that the incident occurred because Ms. Atkins was jealous or had problems. Plaintiff stated that she initially asked Ms. Atkins to assume 1:1 supervision while she left the Home, but Ms. Atkins refused. Josie Laney, Plaintiff's direct supervisor, also acknowledged that Plaintiff went to the BP station to get sodas. Ms. Laney asserted that it was her fault because she took over for Plaintiff but forgot to sign the 1:1 sheet. Ms. Laney also contended that the incident occurred because of problems with Ms. Atkins. Ms. Laney claimed that Ms. Atkins was mad that she did not get weekends off, that she was not lead worker in the Home, and because Plaintiff implied that Ms. Atkins had stolen some shoes that Plaintiff had given to R.S. for her birthday.

In accordance with Department Operating Regulation 2.205, Mr. Hillman sent an Investigation Request Form to the Department of Mental Health's Office of General Counsel Investigations Unit on June 15, 2006. The investigators in the Investigation Unit are not employees of BHC. In regard to the June 15, 2006 incident, Investigator Marianne Marxkors conducted interviews, gathered documents, and issued an investigative report summarizing her findings. Based on these findings, Ms. Marxkors and General Counsel Mary Tansey concluded that Plaintiff was guilty of Class II Neglect, for failing to maintain the prescribed 1:1 supervision level of R.S. on June 15, 2006. General Counsel Tansey and Ms. Marxkors recommended that Plaintiff receive discipline and that Ms. Laney be re-inserviced on the 1:1 Supervision Level Assignment Contract upon transferring of clients. As a result of the June 15, 2006 incident,

Plaintiff received a Notice of Unacceptable Conduct, and was placed on administrative leave until June 22, 2006.

Plaintiff returned from administrative leave on June 22, 2006. On the same day, she signed a 1:1 supervision contract for R.S., covering the third shift from June 22, 2006 to June 23, 2006. On June 23, 2006, Brenda Atkins reported to Talmage Hillman that Plaintiff did not maintain continuous 1:1 supervision of R.S. during that shift. Specifically, Ms. Atkins reported that R.S. would be up during the night, but that Plaintiff did not keep her within arms length. Ms. Atkins also stated that, at approximately 6:00 a.m. on June 23, 2006, R.S. was awake while Plaintiff was sitting outside on the patio. Iris Clacks, a Developmental Assistant II, reported that when she came on duty at 6:15 a.m. on June 23, 2006, R.S. was sitting on the patio by herself, while Plaintiff was in the office with Ms. Laney.

Plaintiff acknowledged that she did not sit in a chair outside R.S.'s door, but contended that the 1:1 contract did not apply to the third shift. Plaintiff testified that she had been doing thirty minute checks of R.S. since January 2006 and had never been cited or disciplined for doing so until June 2006. Both Plaintiff and Josie Laney attributed the incident to their problems with Ms. Atkins. Plaintiff further contended that Ms. Laney told her that she did not have to sit outside R.S.'s door. Ms. Laney reported that she believed that R.S. required a visual check every thirty minutes while sleeping, but she denied telling Plaintiff that she did not have to sit outside R.S.'s door. Nurse Herrin gave an investigative statement in which she said that R.S.'s patient chart noted that R.S. was to be on 1:1 supervision while awake, and that Nurse Herrin didn't see any changes to that directive reflected in the chart. Ms. Laney also stated that she and Nurse Herrin looked in R.S.'s charts and that they couldn't find anything that changed the 1:1

7

supervision while awake requirement. Rebecca Post, the Assistant Superintendent of BHC in 2006, testified that, based on what was written in the investigative report, there was confusion with respect to the Addendum to R.S.'s PCP on the third shift of June 22, 2006 through June 23, 2006.

In accordance with Department Operating Regulation 2.205, Mr. Hillman sent an Investigation Request Form to the Department of Mental Health's Office of General Counsel Investigations Unit on June 26, 2006. In regard to the June 26, 2006 incident, Investigator Terri Kossman conducted interviews, gathered documents, and issued an investigative report, summarizing her findings. Based on those findings, Ms. Kossman and General Counsel Mary Tansey concluded that Plaintiff was guilty of Class II Neglect for failing to maintain the prescribed 1:1 supervision level of R.S. on June 22, 2006. The investigative report also contained a Plan of Correction, which stated that "BHC will ensure that the Physician's orders, Home Profile, and Person Centered Plan Addendum all consistently describe [R.S.]'s required level of supervision. [R.S.]'s addendum will be placed in the appropriate place in the program folder to ensure that the most current information is readily available."

Ms. Kossman and General Counsel Tansey recommended that Plaintiff's name be placed on the Department of Mental Health employee disqualification list, and recommended that Ms. Laney be retrained on the Addendum to R.S.'s PCP and receive appropriate corrective action for providing false information to the investigator about Plaintiff sitting outside R.S.'s door. Both Plaintiff and Ms. Laney were placed on administrative leave as a result of the incident. Because Plaintiff had two substantiated charges of Class II Neglect within a two week period, she was terminated and her name was placed on the Department of Mental Health disqualification registry.

Plaintiff was notified by letter on July 27, 2006 of her dismissal from her position as a Developmental Assistant I at BHC, pending a due process hearing. Her dismissal became effective on August 9, 2006. Plaintiff appealed her dismissal to the Personnel Advisory Board of the State of Missouri. In its Findings of Fact, Conclusions of Law, Decision and Order, the Board noted that "the Appointing Authority presented no evidence to prove that the June 15 incident of class II neglect actually occurred as alleged," thus it found that "the Appointing Authority failed to prove that the Appellant committed class II neglect twice in a twelve month period and, therefore, did not prove cause for dismissal pursuant to DOR 2.205(10)(A)." Nevertheless, the Board found that Plaintiff's "failure to maintain the required level of supervision put client R.S. at risk for injury" and determined that her "dismissal serves the good of the service." (Pl. Ex. 26).

On February 19, 2005, Plaintiff filed a Charge of Discrimination jointly with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC"). The 2005 Charge alleged that Plaintiff was subjected to sexual harassment by a co-worker at BHC. Plaintiff noted in the 2005 Charge that she notified Defendant of the complained-of conduct and they promptly took remedial action by suspending the co-worker. Plaintiff stated that she believed this response to be insufficient. The EEOC closed its file and sent Plaintiff a right to sue letter on August 3, 2005. On August 27, 2006, Plaintiff filed a second Charge of Discrimination jointly with the MCHR and the EEOC. Plaintiff claimed that she was discharged because she had filed a prior Charge of Discrimination against Defendant, which was dismissed in June 2006. In the box asking Plaintiff to identify what the discrimination was based on, Plaintiff checked only the box marked "retaliation." The EEOC closed its file and issued Plaintiff a right to sue letter with respect to the 2006 Charge in January 2007.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Further, if the nonmoving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine

dispute exists, the burden then shifts to the nonmoving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e)(2). When the burden shifts, the nonmoving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the nonmoving party must show there is sufficient evidence favoring the nonmoving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

IV. **DISCUSSION**

    A. **POSSIBLE RACE AND GENDER DISCRIMINATION CLAIMS**

The gist of Plaintiff's complaint is that she was retaliated against for filing a previous employment discrimination lawsuit against Defendant in 2005. In her 2006 Charge of Discrimination filed with the MHRC and the EEOC, Plaintiff marked that her charge of

discrimination was based on retaliation. She did not indicate that her charge was based on anything else, including gender or race. However, in her Employment Discrimination Complaint, filed *pro se*, Plaintiff appears to assert not only her retaliation claim, but also claims of race and gender discrimination. She does not offer any description or explanation of these claims, rather, she merely checked the "race" and "gender" boxes, indicating that she believed these to be the reasons for the discrimination. Although it is not clear from Plaintiff's arguments whether she is actually pursuing these claims, the Court will assume that she is and address the issue of exhaustion of administrative remedies.

"Title VII establishes an administrative procedure which a complaining employee must follow before filing a lawsuit in federal court." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). "Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Id.* (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 180-81 (1989)). The procedure for exhausting administrative remedies is set forth in 42 U.S.C. § 2000e-5, which requires that the claimant: "(1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge and (2) receive notice of the right to sue." *Id.* "A plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of the charges timely brought before the EEOC." *Id.* (citing *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir. 1986)).

In the present case, Plaintiff only set forth her retaliation claim in her 2006 Charge of Discrimination filed with the MHRC and the EEOC; no mention was made therein of any race or gender discrimination claims. Plaintiff received a notice of the right to sue with respect to her retaliation claim, but again no mention was made therein of any race or gender discrimination claims. It is clear that Plaintiff exhausted her administrative remedies with respect to her retaliation claim. However, the same cannot be said with respect to her other claims of race and gender discrimination, unless these claims can be said to be like or reasonably related to Plaintiff's retaliation claim. The Court finds that they are not.

Like the plaintiff in the *Williams* case, Plaintiff "failed to allege any facts in the narrative section of her charge which raise the issue of race [or gender] discrimination." 21 F.3d at 222. In *Williams*, the Eighth Circuit reasoned that "[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Id.* at 223. Thus, the Eighth Circuit found that the plaintiff's claims of race discrimination were "separate and distinct from her claims of retaliation." *Id.* The Court adopts this reasoning with respect to the case at hand and finds that Plaintiff failed to exhaust her administrative remedies with respect to her claims of race and gender discrimination only. Therefore, to the extent Plaintiff pursues these claims, the Court grants summary judgment in favor of Defendants.

### B.  RETALIATION CLAIM

Plaintiff alleges that her employment with Defendant was terminated because she had previously filed a Charge of Discrimination against Defendant, which was dismissed in June

2006.[4] Under Title VII of the Civil Rights Act of 1964, an employer is prohibited from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The Parties agree, and this Court finds, that there is no direct evidence of discrimination, so the burden-shifting approach set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green* is the applicable standard. 411 U.S. 792, 802 (1973).

The *McDonnell Douglas* burden-shifting approach is used in analyzing claims of intentional discrimination under Title VII, including retaliation claims. Under this approach, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. If the plaintiff is able to do so, the burden then shifts to the employer to articulate a nondiscriminatory or non-retaliatory reason for the employment action. If the employer is able to do so, the plaintiff then must show that the proffered reason is pretextual. *Id*. at 802-804; *see also Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 850 (8th Cir. 2005). A "presumption of discrimination is created when the plaintiff meets [his or her] burden of establishing a *prima facie* case of employment discrimination." *Rodgers*, 417 F.3d at 850. The Eighth Circuit further emphasizes that "[a] minimal evidentiary showing will satisfy this burden of production." *Id.* The burden then shifts to the employer, and "[i]f the employer meets its burden, 'the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination.'" *Id.* (quoting *Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005)).

---

[4]It was the actual lawsuit that resulted from Plaintiff's 2005 Charge of Discrimination that was dismissed in June of 2006. The Charge itself was resolved by the MHRC and EEOC in August 2005, when they issued Plaintiff a right to sue letter.

1. *Plaintiff's Prima Facie Case of Retaliation*

The general rule is that "'[a]t-will' employees can be terminated at any time without cause." *Cruesoe v. MERS/Missouri Goodwill Industries*, 2006 WL 2917363, at *11 (E.D. Mo. October 11, 2006). However, an exception to this rule exists, in that an employer may not "discriminate against an employee for engaging in protected action." *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 913-14 (8th Cir. 2006). A plaintiff establishes a *prima facie* case for retaliation if he or she can "show (1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Id.* at 914. Defendant does not dispute that Plaintiff filed a previous charge of discrimination (a statutorily protected activity), or that her employment was terminated (an adverse employment action), thereby satisfying the first and second prongs. Thus, the only issue is whether there is a causal connection between Plaintiff's previous charge of discrimination and her termination.

"To prove a causal connection under the third element, a plaintiff must prove that an employer's retaliatory motive played a part in the adverse employment action." *Gilooly v. Mo. Dep't of Health & Senior Servs.*, 421 F.3d 734, 739 (8th Cir. 2005). Direct evidence is not required, rather "'[e]vidence that gives rise to an inference of retaliatory motive on the part of the employer is sufficient to prove a causal connection.'" *Id.* at 739-740 (quoting *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 896-97 (8th Cir. 2002)). "The timing of a plaintiff's discharge in relation to his protected activity can sometimes establish causation for the purpose of establishing a prima facie case." *Sherman v. Runyon*, 235 F.3d 406, 410 (8th Cir. 2000). However, "'[g]enerally, more than a temporal connection . . . is required to present a genuine

15

factual issue on retaliation.'" *Kipp*, 280 F.3d at 897 (quoting *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999)) (alterations in original). "Instead, the timing of the discharge is usually evaluated in light of other evidence, or lack of other evidence, in the record." *Sherman*, 235 F.3d at 410.

In this case, Plaintiff's evidence regarding the temporal connection between the protected activity and her discharge is not persuasive. Plaintiff filed her initial sexual harassment Charge of Discrimination with the MCHR and the EEOC on February 19, 2005, although she notified Defendant of the complained-of conduct prior to that date. However, Plaintiff's employment was not terminated until August 9, 2006, approximately a year and a half later. This year and a half interval between Plaintiff's sexual harassment complaint and her termination is insufficient alone to establish a showing of causal connection. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) ("Action taken (as here) 20 months later suggests, by itself, no causality at all."); *Recio v. Creighton Univ.*, 521 F.3d 934, 941 (8th Cir. 2008) (temporal connection of six months "not close enough to raise an inference of causation"); *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) ("the interval of two months between the complaint and [the] termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [plaintiff]'s favor on the matter of causal link"); *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 685 (8th Cir. 2001) ("seven-month time lapse between the protected activity and the alleged retaliatory act is, without more, too long for the incidents to be temporally-and therefore causally-related").

Although the temporal connection here does not give rise to an inference of retaliatory motive, Plaintiff has set forth what she claims is "other evidence" of retaliatory motive. First, she

points to the disparity of punishment received by Plaintiff and Ms. Laney with respect to the June 15, 2006 incident. Plaintiff asserts that she was unfairly assigned to receive a disciplinary action (resulting in a finding that she was guilty of Class II Neglect) for that incident, while Ms. Laney, who had agreed to assume 1:1 supervision but forgot to sign the sheet, was only required to retrain on transferring supervision of patients. This alleged "disparity" does not suggest a retaliatory motive on the part of Defendant. First, it was Plaintiff who assumed responsibility for R.S., by signing the 1:1 supervision contract for the third shift on June 14-15, 2006. Although Ms. Laney, Plaintiff's supervisor, apparently assumed temporary supervision of R.S. while Plaintiff was gone, the supervision contract indicated that Plaintiff was supposed to be engaging in 1:1 supervision of R.S. when she was instead at the BP Station buying soft drinks. Additionally, the Office of General Counsel Investigations Unit did not just cite Plaintiff for the soft drink incident, rather, they also found that R.S. had gone outside of her Home without Plaintiff. There were also allegations that Plaintiff was lying on the couch, while R.S. was seated at a table located more than an arms length away from Plaintiff, in violation of the 1:1 supervision requirements.[5] Therefore, Plaintiff was being disciplined for more conduct than was Ms. Laney. Finally, it is inappropriate to even compare the discipline received by Plaintiff to that received by Ms. Laney because they are not similarly situated employees. *See Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000) ("the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct").

---

[5]Although these allegations were made by Brenda Atkins, an employee with whom Plaintiff asserts she has had personal problems, Plaintiff herself verified in her Initial Investigative Statement that she had been lying on the couch to ease her back pain.

Plaintiff also points to the disparity of punishment received by Plaintiff and Ms. Laney with respect to the June 23, 2006 incident. Plaintiff states that ever since she was assigned to supervise R.S. in January 2006, she had been conducting 30 minute visual checks while R.S. was sleeping, without correction from any of her supervisors. She argues that she was unfairly found to be guilty of Class II Neglect, while Ms. Laney, who also believed that 30 minute visual checks were sufficient, was only required to re-train on R.S.'s PCP. This alleged "disparity" does not suggest a retaliatory motive on the part of Defendant. Even if there was confusion as to R.S.'s chart regarding third shift supervision, which the Office of General Counsel Investigations Unit determined should be corrected, Plaintiff was specifically trained on the need to maintain 1:1 supervision of R.S. at all times, including while she was sleeping (by sitting outside her door). This training took place in February 2006, after Plaintiff began regularly supervising R.S., so the training was especially pertinent for her. Furthermore, Plaintiff was the employee who signed the 1:1 supervision contract for the third shift on June 22-23, 2006, thereby accepting responsibility for supervising R.S. Neither Ms. Laney nor any other employee had accepted that responsibility. Thus, the punishment was for different conduct. Finally, as previously noted, Ms. Laney and Plaintiff are not similarly situated employees and, therefore, the discipline comparison does not produce a reliable result. *See Clark*, 218 F.3d at 918.

      Plaintiff is unable to set forth evidence that gives rise to an inference of retaliatory motive on the part of the employer, as required to prove that a causal connection exists. The temporal connection between the protected activity and the adverse employment action is attenuated and is insufficient alone to establish a showing of causal connection. Moreover, Plaintiff's "other evidence" of retaliatory motive is not persuasive. The disparity of the punishment she received

and that assigned to Ms. Laney is easily attributed to other legitimate reasons. "[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers." *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995).

        2.        *Defendant's Legitimate, Non-Retaliatory Reasons for the Termination*

Because Plaintiff is unable to establish a *prima facie* case of employment discrimination, it is unnecessary for the Court to address whether Defendant had legitimate, non-retaliatory reasons for the termination of Plaintiff's employment. The Court does note, however, that "Title VII protection from retaliation for filing a complaint does not clothe the complainant with immunity for past and present inadequacies [or] unsatisfactory performance." *Valdez v. Mercy Hosp.*, 961 F.2d 1401, 1403 (8th Cir. 1992); *see also Jackson v. St. Joseph State Hosp.*, 840 F.2d 1387, 1390 (8th Cir. 1988) ("The mere act of filing an EEOC complaint does not render illegal all subsequent disciplinary actions taken by the [employer].").

Defendant is entitled to summary judgment in its favor with respect to Plaintiff's employment discrimination claim of retaliation.

## V.    CONCLUSION

The Court finds that Plaintiff failed to exhaust her administrative remedies with respect to her claims of race and gender discrimination only. To the extent Plaintiff pursues these claims, the Court grants summary judgment in favor of Defendant. Additionally, the Court finds that Plaintiff is unable to establish a *prima facie* case of retaliation, thus, the Court grants summary judgment in favor of Defendant on this claim.

Accordingly,

19

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [doc. #29] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [doc. #54] is **DENIED**.

Dated this 7th Day of May, 2009.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE